UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRENDAN DUNN, | CASE NO. C18-0257JLR |
| Plaintiff, | ORDER DENYING MOTION TO DISMISS |
| v. | |
| CITY OF SEATTLE, et al., | |
| Defendants. | |

## I.   INTRODUCTION

Before the court is Defendant City of Seattle's ("the City") motion to dismiss. (MTD (Dkt. # 6).)  Plaintiff Brendan Dunn opposes the City's motion.  (*See* Resp. (Dkt. # 15).)  The court has considered the motion, the parties' submissions in support of and in

//

//

//

//

opposition to the motion, the relevant portions of the record, and the applicable law.

Being fully advised,[1] the court DENIES the motion.

## II.    BACKGROUND

On November 5, 2006, Mr. Dunn attended an anti-war rally in Seattle, Washington, with two friends.  (Am. Compl. (Dkt. # 3) ¶ 3.1.)  They displayed an "anarcho-syndicalist flag[] on a flimsy pole" but were not performing any suspicious or illegal acts.  (*Id.* ¶¶ 3.1-3.2.)  A Seattle Police Department ("SPD") officer confiscated the flag and arrested one of Mr. Dunn's friends for taking a picture of the officer with the flag.  (*Id.* ¶¶ 3.3-3.4.)  Mr. Dunn then "supposedly" choked the officer, although Mr. Dunn maintains that he never touched him.  (*Id.* ¶ 3.5.)  The officer arrested Mr. Dunn for felony assault, and the King County Prosecuting Attorney later dismissed that charge against Mr. Dunn.  (*Id.* ¶¶ 3.5-3.6.)

After his arrest, SPD entered an "officer safety advisory" into databases for SPD, the Washington State Patrol, and the National Crime Information Center.  (*Id.* ¶ 3.7.)  The advisory said that Mr. Dunn was "potentially dangerous to law enforcement officers" and had been "involved in an assault against a police officer."  (*Id.*)  It also directed officers not to "arrest or detain [Mr. Dunn] based" on the alert.  (*Id.*)  Mr. Dunn maintains that none of the information in the advisory was true and alleges that "it was designed to create a threat to [him] and result in future harassment."  (*Id.* ¶ 3.8.)

---

[1] Neither party requests oral argument (*see* MTD at 1; Resp. at 1), and the court determines that oral argument would not be helpful to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

In June 2008, Mr. Dunn sued the City and several SPD officers for violating his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights ("the 2008 Suit"). *See Dunn v. Hyra*, No. C08-0978JLR, Dkt. # 4 ("2008 Compl.") ¶ 1.1 (W.D. Wash. 2008).[2] He alleged that he was falsely arrested, falsely imprisoned, subjected to excessive force, and maliciously prosecuted for what happened at the protest. *Id.* The parties settled that case at the end of 2009. (Sharifi Decl. (Dkt. # 7) ¶ 3, Ex. 2; *id.* ¶ 4, Ex. 3 ("Settlement Agreement").) The City agreed to pay Mr. Dunn "a sum of money and to remove the 'safety alert.'" (MTD at 2; *see also* Settlement Agreement at 2.) The settlement agreement required the City to remove the alert within "15 federal court days." (*See* MTD at 4; *see also* Settlement Agreement at 2.)

In this suit, Mr. Dunn alleges that the City failed to remove the safety alert until 2016. (*See* Am. Compl. ¶ 3.12.) He alleges that while the alert remained in place, various law enforcement agencies "distributed" it "widely." (*See id.* ¶ 3.10.) He alleges that he did not realize the alert was still active until "he began repeatedly getting pulled over in 2015-2016 without cause in [u]pstate New York, where he . . . had moved." (*Id.* ¶ 3.13.) Mr. Dunn then filed a public records request with the Washington State Patrol and learned in "late January of 2016" that the "alert codes and warnings were still active in the system." (*Id.* ¶¶ 3.15-3.16.) On February 3, 2016, Mr. Dunn wrote a letter to the City asking for the alert to be removed. (*Id.* ¶ 3.17.) On February 19, 2016, an attorney

---

[2] The court takes judicial notice of the 2008 Suit. *See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

for the City advised that the City had removed the alert.  (*Id.* ¶ 3.18; *see also id.*

¶¶ 3.19-3.20.)  Mr. Dunn alleges that since the City removed the alert, law enforcement

has stopped him less often.  (*Id.* ¶ 3.21.)  Before the removal, Mr. Dunn was "extremely

distressed" about being "repeatedly pulled over."  (*Id.* ¶ 3.22.)

Based on those events, Mr. Dunn brings claims pursuant to 42 U.S.C. § 1983 for

various constitutional violations (*id.* ¶¶ 5.1-5.10); for violations of his rights under the

Washington Constitution (*id.* ¶¶ 5.11-5.14); and for intentional infliction of emotional

distress (*id.* ¶¶ 5.20-5.24.)  The City moves to dismiss his claims on two grounds:  (1)

Mr. Dunn lacks Article III standing because the injuries he claims occurred because of

law enforcement officers in New York, and (2) res judicata bars Mr. Dunn's claims.[3]

(*See* MTD at 2-3.)

### III.    ANALYSIS

**A.    Legal Standards**

The City brings its motion under Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6).  (*See* MTD at 3.)  "A Rule 12(b)(1) jurisdictional attack may be facial or

factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a

facial attack, the challenger asserts that the allegations contained in a complaint are

insufficient on their face to invoke federal jurisdiction."  *Id.* (internal citation omitted).

In contrast, "in a factual attack, the challenger disputes the truth of the allegations that, by

_____

[3] The City also asserts that the statute of limitations has run on a breach of contract claim.
(*See* MTD at 2.)  However, Mr. Dunn does not bring such a claim.  (*See generally* Am. Compl.;
MTD at 2; Resp. at 16-17.)

themselves, would otherwise invoke federal jurisdiction." *Id*. Because the City

challenges Mr. Dunn's standing solely on the pleadings, the City asserts a facial attack.

*See id*.; (MTD at 3-5 (relying solely on Mr. Dunn's amended complaint).)

To evaluate a facial Rule 12(b)(1) motion, the court takes "the allegations in the

plaintiff's complaint as true." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). At

the pleading stage:

> To invoke a federal court's subject-matter jurisdiction, a plaintiff needs to
> provide only "a short and plain statement of the grounds for the court's
> jurisdiction." Fed. R. Civ. P. 8(a)(1). The plaintiff must allege facts, not
> mere legal conclusions, in compliance with the pleading standards
> established by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 . . . (2007), and
> *Ashcroft v. Iqbal*, 556 U.S. 662 . . . (2009).

*Leite v. Crane Co*., 749 F.3d 1117, 1121 (9th Cir. 2014).

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to

state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Although a

plaintiff does not have to make "detailed factual allegations," a complaint must include

"more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556

U.S. at 678. In other words, a complaint must include sufficient factual allegations to

"state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted)

(quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the pleaded

factual content allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* Under Rule 12(b)(6), the court can dismiss a

complaint based on "the lack of a cognizable legal theory or the absence of sufficient

facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901

F.2d 696, 699 (9th Cir. 1990). When considering a Rule 12(b)(6) motion, the court construes the complaint in the light most favorable to the nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and accepts all well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor, *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). A defendant may raise the affirmative defense of res judicata under Rule 12(b)(6). *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam).

**B.     The City's Motion**

Because standing implicates the court's subject matter jurisdiction, the court addresses that issue first. Finding that Mr. Dunn adequately alleges standing, the court next concludes that res judicata does not bar his claims.

    1.     Standing

The City first argues that Mr. Dunn does not have Article III standing because his alleged injuries are not fairly traceable to the City.[4] (*See* MTD at 5.) The City bases its argument on what it identifies as Mr. Dunn's three alleged injuries: (1) the safety alert caused New York law enforcement officers to subject Mr. Dunn to illegal traffic stops; (2) the safety alert caused those officers to detain him unlawfully; and (3) the safety alert exposed Mr. Dunn to a greater risk of excessive force by those officers. (*Id.* at 6.) The

---

[4] The City does not challenge the injury and redressability elements of standing. (*See* MTD.) The court therefore does not address those elements other than to note that based on the face of the amended complaint, Mr. Dunn adequately alleges those requirements. (*See* Am. Compl. ¶¶ 4.1-5.24 (alleging constitutional violations and monetary damages)); *see also Mendia v. Garcia*, 768 F.3d 1009, 1012 (9th Cir. 2014) (stating that monetary damages would redress the alleged constitutional injury).

City argues that those injuries are traceable to "state and local law enforcement officials," not to the City. (*Id.*) Thus, the City contends that Mr. Dunn does not adequately allege causation. (*See id.*) In response, Mr. Dunn argues that his injuries are traceable to the City because the alert caused officers to take action against him. (*See* Resp. at 14-15.)

"The 'irreducible constitutional minimum' of standing contains three elements: (1) [the] plaintiff must have suffered an 'injury in fact'; (2) the injury must be 'fairly traceable' to the challenged conduct of the defendant, and not the result of the independent action of some third party; and (3) it must be likely, as opposed to merely speculative, that the injury will be 'redressed' by a favorable decision." *Medina v. Clinton*, 86 F.3d 155, 157 (9th Cir. 1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . . ." *Lujan*, 504 U.S. at 561.

"[T]he defendant's action" need not "be the sole source of the injury." *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1142 (9th Cir. 2013). Indeed, "[c]ausation may be found even if there are multiple links in the chain connecting the defendant's unlawful conduct to the plaintiff's injury, and there's no requirement that the defendant's conduct comprise the last link in the chain." *Mendia*, 768 F.3d at 1012. "[W]hat matters is not the 'length of the chain of causation,' but rather the 'plausibility of the links that comprise the chain.'" *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002) (quoting *Autolog Corp. v. Regan*, 731 F.2d 25, 31 (D.C. Cir. 1984)).

The injuries Mr. Dunn complains of are fairly traceable to the City's alleged failure to remove the alert. Although Mr. Dunn "relies on a causal chain with multiple

links," *see Mendia*, 768 F.3d at 1013, he alleges a causal chain—beginning with the

City's failure to remove the alert—that does not rely on "speculation" or "guesswork,"

*see id.* (stating that the plaintiff may allege that the government caused an injury "by

influencing the conduct of third parties" if the plaintiff does not "rely on 'speculation' or

'guesswork' about the third parties' motivations").  He asserts that the City's failure to

remove the alert following settlement led to increased traffic stops and an increased risk

of excessive force, which in turn caused the alleged constitutional violations.  (*See* Am.

Compl. ¶¶ 3.13, 3.21-3.23, 4.4, 5.7, 5.12, 5.18, 5.21.)  In addition, Mr. Dunn claims that a

New York police officer told Mr. Dunn that he was being stopped because of the alert.

(*Id.* ¶ 3.14.)  Even though nonparty state and local law enforcement officials may have

also been a cause of Mr. Dunn's injuries, as the City contends, Mr. Dunn does not have to

demonstrate that the City is the only source of his injuries.  *See Bellon*, 732 F.3d at 1142.

The City's reliance on *National Council of La Raza v. Mukasey*, 283 F. App'x 848

(2d Cir. 2008), is misplaced.  (*See* Reply (Dkt. # 17) at 3.)  In that case, "four non-profit

advocacy organizations and one labor union" sued to prevent the government from

entering "certain civil immigration records" into the National Crime Information

Center database.  *La Raza*, 283 F. App'x at 850.  The Second Circuit Court of Appeals

held that the plaintiffs failed to demonstrate causation because their "pleadings do not

support the conclusion that defendants' actions have had a determinative or coercive

effect on those state and local authorities that carry out the allegedly unlawful arrests."

*Id.* at 852.  Here, however, Mr. Dunn alleges that at least one officer told him that the

alert was the reason the officer stopped him.  (*See* Am. Compl. ¶ 3.14.)  Thus, as pled, the

alert and the City's failure to remove it are plausible links in the chain leading to Mr. Dunn's alleged constitutional violations.

For those reasons, the court concludes that Mr. Dunn has standing and denies the City's motion to dismiss on that basis. The court now addresses the City's res judicata argument.

## 2. Res Judicata

The City argues that Mr. Dunn's "current lawsuit involves the same cause of action as his 2008 lawsuit." (MTD at 7.) Although the City did not remove the safety alert per the 2009 settlement agreement, the City argues that "under res judicata, that conduct clearly arose out of the same nucleus of operative facts" as the 2008 Suit. (*See id.* at 8 n.6.) For example, the City argues that in the 2008 Suit, Mr. Dunn could have made the argument "that the safety alert was a 'ticking time bomb' because it exposed him to a heightened risk of being subjected to excessive force." (*Id.* at 8 (quoting Am. Compl. ¶ 3.23).) Mr. Dunn argues that res judicata does not "apply to unanticipated future action that could not have been included" in an earlier case because the action had not occurred. (Resp. at 14.)

"Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001). Res judicata applies "whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003) (internal quotation marks omitted)

1  (quoting *Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.*, 298 F.3d 1137, 1143 n.3 (9th

2  Cir. 2002)).   In determining whether there is an "identity of claims," courts in the Ninth

3  Circuit consider "(1) whether rights or interests established in the prior judgment would

4  be destroyed or impaired by prosecution of the second action; (2) whether substantially

5  the same evidence is presented in the two actions; (3) whether the two suits involve

6  infringement of the same right; and (4) whether the two suits arise out of the same

7  transactional nucleus of facts." *Constantini v. Trans World Airlines*, 681 F.2d 1199,

8  1201-02 (9th Cir. 1982); *see also Tahoe-Sierra Pres. Council*, 322 F.3d at 1078 ("Newly

9  articulated claims based on the same nucleus of facts may still be subject to a res judicata

10  finding if the claims could have been brought in the earlier action.").   The fourth factor is

11  the most important. *See United States v. Liquidators of European Fed. Credit Bank*, 630

12  F.3d 1139, 1151 (9th Cir. 2011).

13       The City's argument fails because there is no identity of claims.   Although this

14  case implicates some of the facts that the 2008 Suit did—namely, the existence of the

15  safety alert—Mr. Dunn could not have previously litigated constitutional violations

16  arising from the City's failure to remove the alert. *See Turtle Island Restoration Network

17  v. U.S. Dep't of State*, 673 F.3d 914, 919 (9th Cir. 2012) ("The existence of the same

18  harm isn't enough to establish claim preclusion if the harm arises from different facts.").

19  The City's duty to remove that alert arose from the settlement agreement—which did not

20  exist at the time Mr. Dunn brought the 2008 Suit.   (*See* Settlement Agreement); *cf.*

21  *Melendres v. Arpaio*, 154 F. Supp. 3d 845, 857 (D. Ariz. 2016) (holding that there was no

22  identity of claims between a later contempt cause of action and the previously litigated

causes of action giving rise to the injunction). Mr. Dunn could not have brought his current claims in the 2008 Suit because the incidents upon which they are founded—the City's failure to remove the alert and the alleged constitutional violations—simply had not yet occurred.[5] *See Rutherford v. FIA Card Servs., N.A.*, No. CV 13-02934 DDP (MANx), 2013 WL 12204309, at *3 (C.D. Cal. Sept. 30, 2013) ("[T]here can be no identity of claims because the alleged post-judgment wrongful acts had, by definition, not yet occurred."). Thus, Mr. Dunn could not have asserted his current claims in the 2008 Suit. *See Tahoe-Sierra Pres. Council*, 322 F.3d at 1078.

Moreover, Mr. Dunn's allegations make clear that he challenges the failure to remove the safety alert and his injuries from that failure. Specifically, Mr. Dunn alleges that the City violated his constitutional rights by "fail[ing] to properly train, supervise, and discipline officers who [in turn] failed to . . . remove the alerts and warnings" (Am. Compl. ¶ 5.7) and failing "to follow through on the settlement and remove . . . the false and potentially extremely dangerous misinformation" (*id.* ¶ 5.12). Mr. Dunn thus confines his claims to the period following the parties' settlement, which will not impair any rights from the 2008 Suit or require him to present completely overlapping evidence. *See Constantini*, 681 F.2d at 1201-02 (listing the first three factors courts consider in a res judicata analysis). Res judicata does not bar those claims.

---

[5] Although the City does not raise the sufficiency of Mr. Dunn's factual allegations in its motion (*see* MTD), it appears to do so in its reply brief (*see* Reply at 4). The court does not otherwise address that issue because the City did not raise it earlier. *See State of Nev. v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990) (stating that a party may not raise a new issue for the first time in its reply brief).

For the foregoing reasons, Mr. Dunn adequately alleges standing, and res judicata does not bar his claims. The court therefore denies the City's motion.

## IV. CONCLUSION

For the reasons set forth above, the court DENIES the City's motion to dismiss (Dkt. # 6).

Dated this 7th day of August, 2018.

JAMES L. ROBART
United States District Judge